**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Continental Casualty Company, et al., | No. CV-21-01251-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Nancy Culver, et al., | |
| Defendants. | |

  Plaintiffs Continental Casualty Company and Valley Forge Insurance Company (collectively, "Continental") filed this action seeking a declaratory judgment that Claimant Defendants' *Damron* agreement is invalid and unenforceable. (Doc. 1.) Claimants answered the Complaint and asserted three counterclaims. (Doc. 13.) Pending before the Court are Continental's motion for summary judgment on Claimants' counterclaims (Doc. 150) and Claimants' motion for partial summary judgment on Continental's request for declaratory judgment. Both motions are fully briefed.[1] (Docs. 150, 155, 169, 173, 181, 182). For the reasons herein, Continental's motion for summary judgment is granted, and all remaining motions are denied as moot.

**I. BACKGROUND**[2]

---

[1] The parties' request for oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] The facts underlying this action are, for the most part, undisputed and were established during the state court proceedings.

This case has a lengthy and difficult history, the most pertinent portions of which are summarized here. Stephen Gore and his wife owned and operated Biological Resource Center, Inc. ("BRC"), a deceased body donation company that encouraged individuals to donate their loved ones' bodies for what was advertised as medical and scientific research. In reality, the bodies were grossly mishandled. Upon receiving the donated bodies, Gore disarticulated and transferred the bodies to other entities, including Platinum Training, LLC ("Platinum"), a company that supplies human tissue to bio-skills laboratories, universities, and the department of defense. BRC carried no liability insurance. Platinum, however, was insured by Continental.

A. The *Beecher* Action

In 2015, families of individuals whose bodies were donated to BRC sued Gore, BRC, and Platinum in Maricopa County Superior Court for the misuse of the donated bodies. *Beecher v. Biological Res. Ctr., Inc.*, 2015 CV-013391 (Maricopa Cnty. Sup. Ct. 2015). The plaintiffs argued that Platinum could be held vicariously liable for all of Gore's conduct because Gore was acting as an agent of Platinum. Prior to trial, Platinum filed a motion for summary judgment, arguing that it could not be liable for any of Gore's conduct prior to the time he became an employee of Platinum, which, at the earliest, was May 24, 2013, when Gore and Platinum executed an employment agreement.

After oral argument on the motion, the state trial court issued the following order:

> Platinum Training does not dispute that Stephen Gore could be liable for plaintiffs' claims. The salient question, therefore, is whether Gore can be characterized as an agent of Platinum Training, whose acts are attributed to that entity. Plaintiffs claim that "Gore was an employee and owner of Platinum when he committed the acts" in question. (Response at 10:11). Of course, if Gore was acting as an employee or agent of Platinum when he committed the acts in question that allegedly gave rise to liability, then Platinum Training can be liable under the doctrine of *respondeat superior*. *Higginbotham v. AN Motors of Scottsdale*, 228 Ariz. 550, 552 (App. 2012).
>
> Plaintiffs have presented some evidence that Gore became an employee of Platinum Training at some point in time. They specifically point to an Employment Agreement dated May 24, 2013. As such, if Gore engaged in actionable conduct with respect to any of the plaintiffs, Platinum Training could have

vicarious liability, if Gore was in fact acting on behalf of Platinum Training. . . .

Defendants point out that only eleven plaintiffs have consent forms and death dates that are after the date of the Employment Agreement. It seems evident that Platinum Training cannot be vicariously liable for Gore's actions before he became its agent.

(Doc. 150-14 at 7.) The trial court concluded that because Gore was not an agent of Platinum prior to May 24, 2013, Platinum could not be vicariously liable for any claims that arose prior to that date. Rather, those claims would proceed to trial against Gore alone.[3]

After the trial court's ruling, Continental—Platinum's insurer—appointed an attorney to defend Gore under a reservation of rights. Continental then settled with all the plaintiffs whose claims arose after May 24, 2013, and so the trial court dismissed Platinum from the case. The remaining plaintiffs—those whose claims arose prior to May 24, 2013—proceeded to trial against Gore. Gore's defense counsel obtained defense verdicts against more than half of the plaintiffs, but the plaintiffs who prevailed—Claimants in this case—won a judgment of approximately $58.5 million.

B.  First Declaratory Judgment Action

On September 13, 2019, Continental filed its first declaratory judgment action in this Court before Judge Humetewa, seeking a declaration that Continental has no duty to indemnify Claimants' civil judgment against Gore. *Continental Casualty Co. v. Platinum Training LLC*, No. CV-19-05163-PHX-DJH (D. Ariz.). In April 2021, while the case was pending before Judge Humetewa, Gore and Claimants entered a *Damron* agreement in which Gore assigned to Claimants all his rights against Continental in exchange for Claimants' promise not to execute on the judgment against him. (Doc. 150-11 at 9–10.) After Claimants and Gore executed the assignment, Continental moved for partial summary judgment.

---

[3] In 2021, the Arizona Court of Appeals affirmed the trial court's finding that Gore was not an agent of Platinum prior to the May 24, 2013 agreement. *See Aloia v. Platinum Med. LLC*, No. 1 CA-CV 20-0176, 2021 WL 1696122 (Ariz. Ct. App. Apr. 29, 2021). In doing so, the court noted that the Claimants "did not provide admissible and non-conclusory evidence in support of their argument that Platinum had the right to control Gore's conduct before Gore was employed by Platinum."

Claimants argued that Continental was bound to pay the civil judgment against Gore because Gore was an agent of Platinum, and Continental is Platinum's insurer. Continental, on the other hand, argued that the state court's ruling—which held that Gore was not an agent of Platinum until May 24, 2013—collaterally estops Claimants from attempting to establish that Gore was an agent of Platinum for the claims that went to judgment. In turn, because Gore was not an agent and therefore was not "an insured" under Platinum's policies, Continental argued that it owed no duty to indemnify the judgment. Judge Humetewa agreed.

In granting Continental's motion for summary judgment, Judge Humetewa first noted that "the duty of an insurer to indemnify requires proof by the claimant defendants of actual coverage." *Continental Casualty Co. v. Platinum Training LLC*, No. CV-19-05163-PHX-DJH, 2021 WL 3491948, at *6 (D. Ariz. Aug. 9, 2021). Coverage, in turn, depends on whether Gore qualifies as "an insured" under Platinum's policies.

Judge Humetewa concluded that Gore was not "an insured," reasoning that to be "an insured" under Platinum's policies, Gore had to be an agent of Platinum, which the state court decided he was not:

> Claimants argue that this action presents the novel issue of whether Gore is insured under Continental's policy. What Claimants have not explained is how Gore could be insured by Continental if he is not an agent of Platinum. While it is true that the precise issue the state court decided was not whether Gore met the definition of an insured under Continental's policy, for the Court to consider that issue would necessarily entail relitigating the issue of whether Gore was an agent, and thus an insured, of Platinum.

> Moreover, while Claimants argue that the issue here is only related to insurance coverage, a number of their exhibits and a significant portion of their briefing involves arguments related to Gore's status as either a member, employee, or volunteer of Platinum prior to May 24, 2013. For instance . . . the Claimants cited to 16 attached exhibits, spanning hundreds of pages, attempting to establish that Gore was an agent of Platinum prior to May 24, 2013. This is the precise issue that was litigated in the state court. . . . [W]hile it appears that Claimants are providing additional evidence here and making additional arguments as to the theory of Gore's alleged association with Platinum, those arguments needed to be made in the state court during the summary judgment process.

- 4 -

*Id.* at *6–7. Finding that all the elements of collateral estoppel were satisfied, Judge Humetewa held that Claimants were precluded from relitigating the issue of whether Gore was an agent of Platinum with respect to the claims that went to judgment in *Beecher*. In turn, because Gore was not an agent of Platinum, Claimants could not establish that Gore was "an insured" and thus owed a duty of indemnification by Continental:

> [T]he trial court, as affirmed by the appeals court, determined that Gore was not an agent of Platinum and therefore that Platinum was not liable for Gore's conduct prior to the relevant date. It logically follows that if Platinum is not liable for his conduct, Platinum's insurer cannot be liable to pay a judgment entered against him. The only possible link between the Claimants and Continental necessarily must run through Platinum. Because that link has been severed, there is no option for this Court to find Continental liable to indemnify the judgment without reversing the decision of the state court, which this Court may not do.

*Id.* at *9. Judge Humetewa concluded:

> The Court is bound . . . to follow the law, and the findings by the state court that Platinum, and thus Continental, was not responsible for Gore's conduct prior to May 24, 2013. The proper course to contest that determination is through the state court appellate process, which Claimants have taken advantage of. However, this Court, as a court of original and specific jurisdiction, does not have the ability to modify these prior rulings. Therefore, the Court must enter declaratory judgment in favor of Continental as to the duty to indemnify the judgments against Gore.

*Id.* at *10.

### C. Second Declaratory Judgment Action

In July 2021, Continental filed the instant declaratory judgment action, this time to address validity of Gore's assignment of his rights against Continental. (Doc. 1.) As the assignees of Gore's rights, Claimants filed three counterclaims against Continental: breach of contract, breach of the implied covenant of good faith and fair dealing, and insurance bad faith. (Doc. 13 at 42–44.) Claimants allege that Gore was insured by Continental and thus, as an insured, was owed certain contractual duties. Claimants assert Continental breached its duty to defend and indemnify Gore in the *Beecher* action and its duty to act in

1  good faith as to not expose Gore to a verdict in excess of policy limits. Claimants assert
2  that they are entitled to "the liquidated amount of the verdict" against Gore.

3  **II.    LEGAL STANDARD**

4       When parties submit cross-motions for summary judgment, the Court must consider
5  each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside*
6  *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will grant summary judgment when,
7  viewing the facts in a light most favorable to the nonmoving party, there is no genuine
8  dispute as to any material fact and the movant is entitled to judgment as a matter of law.
9  Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the
10  governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is
11  genuine if a reasonable jury could return a verdict for the nonmoving party based on the
12  competing evidence. *Id.*

13       Summary judgment may also be entered "against a party who fails to make a
14  showing sufficient to establish the existence of an element essential to that party's case,
15  and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,
16  477 U.S. 317, 322 (1986). In such a situation, the party seeking summary judgment bears
17  the initial burden of informing the Court of the "basis for its motion, and identifying those
18  portions of the [record] which it believes demonstrates the absence of a genuine issue of
19  material fact." *Id.* at 323 (citations and internal quotations omitted). The burden then shifts
20  to the non-movant to establish the existence of a genuine dispute of material fact. *Id.* at
21  324. The non-movant may not simply rest upon the allegations of her pleadings. Rather,
22  the non-movant must point to "specific facts showing that there is a genuine issue for trial."
23  *Id.* at 324. Furthermore, the non-movant "must do more than simply show that there is
24  some metaphysical doubt as to the material facts. . . . Where the record taken as a whole
25  could not lead a rational trier of fact to find for the non-moving party, there is no genuine
26  issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87
27  (1986) (internal quotation and citation omitted).

28

1    **III.    DISCUSSION**

2        Continental moves for summary judgment on Claimants' three counterclaims:

3    breach of contract, breach of the implied covenant of good faith and fair dealing, and bad

4    faith.[4] Continental argues that as a matter of law, it owed no express or implied contractual

5    duties to Gore because Gore was not "an insured" under Platinum's policies for the claims

6    that went to judgment in *Beecher*. The Court agrees.

7        The parties do not dispute that Claimants' counterclaims in the instant case are

8    premised on Continental's actions, or lack thereof, in *Beecher*—specifically, Continental's

9    defense of Gore against Claimants' tort claims. The parties also do not dispute that for

10   Continental to be liable for breach of contract and bad faith, Gore must have been "an

11   insured" under Platinum's policies such that Continental, as the insurer, owed contractual

12   duties to him. *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 459 (Ariz. Ct.

13   1987) ("As a general matter, insurance carriers owe their insureds three duties, two express

14   and one implied. These are the duties to indemnify, the duty to defend, and the duty to treat

15   settlement proposals with equal considerations."); *Nobel v. Nat'l Am. Life Ins. Co.*, 624

16   P.2d 866, 868 (Ariz. 1981) ("[T]here is a legal duty implied in insurance contract that the

17   insurance company must act in good faith in dealing with its insured on a claim, and any

18   violation of that duty of good faith is a tort.").

19       The issue of whether Gore qualified as "an insured" under Platinum's policies for

20   the *Beecher* claims that went to judgment is an issue that was conclusively decided by

21   Judge Humetewa in *Continental Casualty*, 2021 WL 3491948, at *10. Thus, collateral

22   estoppel bars relitigation of it.

23

24   _____

25       [4] Continental argues that Claimants' breach of the implied covenant of good faith
     and fair dealing claim and bad faith claim are duplicative, noting Arizona jury instructions

26   explain "bad faith" as the breach of the implied covenant of good faith and fair dealing,
     citing *Miel v. State Farm Mut. Auto. Ins. Co.*, 192 P.2d 1333, 1338 (Ariz. Ct. App. 1995).

27   Claimants do not explain how these claims are separate grounds for relief. The Court agrees
     with Continental that these claims are redundant and thus will address them singularly as

28   "bad faith." *See e.g.*, *Deese v. State Farm. Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1269 (Ariz.
     1992) (treating "bad faith" and "breach of the implied covenant of good faith and fair
     dealing" interchangeably).

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River Cnty.*, 59 F.3d 852, 863 (9th Cir. 1995). Collateral estoppel applies when,

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

All three factors of collateral estoppel are met here. In the first declaratory judgment action, Judge Humetewa necessarily decided that, with respect to the claims that went to judgment, Gore was not "an insured" under Platinum's policies and therefore Continental owed no duty to indemnify the judgment against him. Claimants contend that Judge Humetewa "did not decide whether Gore was an insured under the policy" and that "[n]o court has ever addressed this issue." (Doc. 173 at 15.) Not so. Judge Humetewa expressly addressed and decided this very issue:

> Claimants argue that this action presents the novel issue of whether Gore is insured under Continental's policy. What Claimants have not explained is how Gore could be insured by Continental if he is not an agent of Platinum. While it is true that the precise issue the state court decided was not whether Gore met the definition of an insured under Continental's policy, for the Court to consider that issue would necessarily entail relitigating the issue of whether Gore was an agent, and thus an insured, of Platinum.

*Continental Casualty*, 2021 WL 3491948, at *6.

Claimants also argue that Judge Humetewa's ruling "focused only on the narrow question of whether the [Claimants] were barred to collect in their own capacity as a stranger to the policies, based on the state court's respondeat superior ruling." (Doc. 173 at 15.) But this is also incorrect. Judge Humetewa's order only centered on whether Continental owed a duty to indemnify the judgment; nothing in her decision touched on Claimants' ability to collect in their own capacity.

As to the remaining factors of collateral estoppel: Claimants do not dispute that the first declaratory judgment action ended with a final judgment on the merits but argue that collateral estoppel is inapplicable because Gore did not appear or litigate any issues in the declaratory judgment action. Therefore, Gore's rights "as an insured under the policy were never pled, argued, litigated, or decided." (Doc. 173 at 17.) The Court disagrees.

First, for collateral estoppel to be asserted against Claimants, Claimants must have been a party to the first proceeding or, at least, in privity with a party to the previous action. There is no dispute that Claimants were a party in the first declaratory judgment action, and collateral estoppel is being asserted against them in this proceeding. Second, even if Gore himself did not appear in the first declaratory judgment action, his status as a potential insured under the policy was actually litigated. Indeed, Continental moved for summary judgment in the first declaratory judgment action *after* Gore had already assigned to Claimants his rights against Continental. As his assignees and "standing in his shoes," Claimants opposed Continental's motion for summary judgment and litigated the issue of whether Gore was "an insured." *Republic Inc. Co v. Feidler*, 875 P.2d 187, 193 (Ariz. Ct. App. 1993) ("When an insured assigns his right to sue his insurer under a liability policy, the assignee takes only those rights that the defendant had. The assignee's rights are derivative of the insured's and the assignee is subject to the same defenses as the defendant was.").

It is clear Claimants had a full and fair opportunity before Judge Humetewa to litigate the issue of Gore's status as "an insured." Because that issue was necessarily decided in a final judgment, Claimants are barred from relitigating it here. Though Claimants may have colorable arguments as to why Gore qualifies as "an insured," the Court is bound by Judge Humetewa's decision and therefore cannot consider such points. Collateral estoppel applies.

Turning now to Claimants' counterclaims, the Court finds that Claimants are not entitled to relief as a matter of law. Gore was not insured for the claims that went to judgment in the *Beecher* action and therefore Continental owed him no contractual duties,

either express or implied. As such, Continental cannot be liable for a failure to defend, a failure to indemnify, or bad faith.[5] *Navajo Freight Lines, Inc. v. Liberty Mut. Inc. Co.*, 471 P.2d 309, 315 (Ariz. Ct. App. 1970) ("A [s]ine qua non to the existence of any obligation to defend, or pay, whether the suit be groundless or otherwise, is the pre-existing relationship of insurer-insured."); *Bowie v. Home Ins. Co.*, 923 F.2d 705, 708 ("The phrase 'duty to defend' presupposes the existence of a lawsuit against an 'insured.'"); *State Farm Auto. Ins. Co. v. Civ. Serv. Emp. Ins. Co.*, 509 P.2d 725, 733 (Ariz. Ct. App. 1973) (noting that duty to settle within policy limits "arises out of the contract between the parties"). Accordingly, the Court grants Continental's motion for summary judgment on Claimants' counterclaims (Doc. 150).

In its motion for summary judgment, Continental states that if the Court grants summary judgment in its favor on Claimants' counterclaims—as the Court has done—Continental will dismiss its Complaint for Declaratory Judgment. (Doc. 150 at 4.) Based on this, the Court construes Continental's motion for summary judgment to include a conditional motion for voluntary dismissal (Doc. 150) and grants the dismissal. In turn, the Court denies as moot the following pending motions: Claimants' motion for partial summary judgment (Doc. 157); Continental's supplemental motion to exclude opinions of Claimants' experts (Doc. 202); and Claimants' supplemental motion to exclude testimony of Steven Plitt (Doc. 203).

**IT IS ORDERED** that Continental's Motion for Summary Judgment (Doc. 150), which the Court construes to also include a Conditional Motion for Voluntary Dismissal, is **GRANTED**. Continental is entitled to judgment on Claimants' counterclaims (Doc. 13). Consequently, Continental's own Complaint for Declaratory Judgment (Doc. 1) is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Claimants' Motion for Partial Summary Judgment (Doc. 157), Continental's Supplemental Motion to Exclude Opinions of

---

[5] Because Claimants' substantive claims fail, Claimants' demand for punitive damages does as well. *Quiroga v. Allstate Ins. Co.*, 726 P.2d 224, 226 (Ariz. Ct. App. 1986) ("[T]he right to an award of punitive damages must be grounded upon a cause of action for actual damages.").

Claimants' Experts (Doc. 202); and Claimants' Supplemental Motion to Exclude Testimony of Steven Plitt (Doc. 203) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment accordingly and terminate this case.

Dated this 29th day of April, 2024.


_____
Douglas L. Rayes
United States District Judge